## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LUZ DE ADA RODRIGUEZ, Administratrix of** | : | |
| **the Estate of JUAN E. RODRIGUEZ, SR.,** | : | |
| **Individually and on Behalf of all Wrongful Death** | : | |
| **and Survival Beneficiaries** | : | |
| 6 Ivey Lane | : | |
| Harrisburg, PA 17104 | : | |
| *Plaintiff,* | : | |
| v. | : | **CA No.: 09-CV-** |
| | : | |
| **COUNTY OF DAUPHIN** | : | *DOCUMENT FILED* |
| Dauphin County Administration Building | : | *ELECTRONICALLY* |
| 2 South Second Street | : | |
| Harrisburg, PA 17101 | : | |
| and | : | |
| **DOMINICK L. DEROSE, WARDEN** | : | |
| Dauphin County Prison | : | |
| 501 Mall Road | : | |
| Harrisburg, PA 17111 | : | |
| and | : | |
| **PRIMECARE MEDICAL, INC.** | : | |
| 3940 Locust Lane | : | |
| Harrisburg, PA 17109 | : | |
| and | : | |
| **PRABHA JINDAL, M.D.** | : | |
| 3940 Locust Lane | : | |
| Harrisburg, PA 17109 | : | |
| and | : | |
| **DRUE WAGNER, M.D.** | : | |
| 3940 Locust Lane | : | |
| Harrisburg, PA 17109 | : | |
| and | : | |
| **DOUG MACUT, P.A.** | : | |
| 3940 Locust Lane | : | |
| Harrisburg, PA 17109 | : | |
| *Defendants.* | : | |

## PLAINTIFF'S CIVIL ACTION COMPLAINT

## PARTIES

1.      Plaintiff, Luz De Ada Rodriguez (hereinafter "plaintiff" and/or "Mrs. Rodriguez") is citizen of Pennsylvania who resides at 6 Ivey Lane, Harrisburg, PA 17104, and she is the Administratrix of the Estate of her late husband Juan E. Rodriguez, Sr. (hereinafter "decedent" and/or "Mr. Rodriguez") who died on approximately December 20, 2007, with letters of administration being issued to Mrs. Rodriguez by the County of Dauphin on February 19, 2008.

2.      At all relevant times, defendant, County of Dauphin (hereinafter "Dauphin County," County" and/or "defendant"), was a municipal corporation and a political subdivision of the Commonwealth of Pennsylvania with offices located at 2 Second Street, Harrisburg, PA 17101, which owned, operated, and/or controlled the Dauphin County Prison located at 501 Mall Road, Harrisburg, PA 17111.  Plaintiff is asserting an action for civil rights violations against this defendant herein.

3.      At all relevant times, defendant, Dominick L. DeRose (hereinafter "DeRose," "Warden," and/or "defendant") was the Warden of the Dauphin County Prison, and was a policy maker for defendant Dauphin County as it relates to the Dauphin County Prison.  Plaintiff is asserting an action for civil rights violations against this defendant herein.

4.      At all relevant times, defendant, PrimeCare Medical, Inc. (hereinafter "PrimeCare" and/or "defendant"), was a corporation or other type of business entity which was a citizen of Pennsylvania, with its headquarters and/or principle place of business at 3940 Locust Lane, Harrisburg, PA 17109.  At all relevant times, defendant PrimeCare was a medical professional in that it had a duty to provide professional medical services to the inmates of Dauphin County Prison, including the decedent.

Plaintiff is asserting a claim for professional negligence and/or violation of civil rights against this defendant herein.

5. At all relevant times, defendant Prabaha Jindal, M.D. (hereinafter "Dr. Jindal" and/or defendant"), was a staff physician at the Dauphin County who was the employee and/or agent of defendants Dauphin County and/or PrimeCare who's duties and responsibilities included the provision of medical treatment and care to prisoners and/or detainees of Dauphin County Prison, including the decedent. Plaintiff is asserting a claim for professional negligence and/or violation of civil rights against this defendant herein.

6. At all relevant times, defendant Drue Wagner, M.D. (hereinafter "Dr. Wagner" and/or defendant"), was a staff physician at the Dauphin County Prison who was the employee and/or agent of defendants Dauphin County and/or PrimeCare who's duties and responsibilities included the provision of medical treatment and care to prisoners and/or detainees of Dauphin County Prison, including the decedent. Plaintiff is asserting a claim for professional negligence and/or violation of civil rights against this defendant herein.

7. At all relevant times, defendant Doug Macut, P.A. (hereinafter "Physician Assistant Macut," "P.A. Macut" and/or "defendant"), was a physician assistant at the Dauphin County Prison who was the employee and/or agent of defendants Dauphin County and/or PrimeCare who's duties and responsibilities included the provision of medical treatment and care to prisoners and/or detainees of Dauphin County Prison, including the decedent. Plaintiff is asserting a claim for

professional negligence and/or violation of civil rights against this defendant herein.

8.      There may be other employees and/or other agents of defendants
Dauphin County and/or PrimeCare with responsibilities for the health, treatment,
care, and/or safety of the decedent during the relevant time period, whose actions
and/or omissions substantially contributed to the injuries, damages, and/or death of
the decedent. The identity of such other persons will be discerned through discovery
and such persons will be joined as defendants when and if appropriate.

9.      Decedent's injuries, damages, and/or untimely death, as well as
plaintiff's damages, were directly related to, and in fact caused by, the negligent
actions and/or inactions of defendants, and by other liability-producing conduct on
the part of defendants, as set forth in this complaint.

10.     The negligent actions and/or inactions of defendants, and other liability-
producing conduct on the part of defendants, as set forth in this complaint, increased
the risk that plaintiff would suffer damages and that decedent would be injured,
damaged, and die an untimely death as he did.

11.     Plaintiff, Luz De Ada Rodriguez, brings this action on behalf of the Estate
of Juan E. Rodriguez, Sr., deceased, under and by virtue of the Probate, Estate, and
Fiduciaries Code, 20 Pa.C.S.A §3373 and 42 Pa.C.S.A. §8302.

12.     According to 42 Pa.C.S.A. §8301, other than those persons listed in
paragraph fifty-seven (57) of this complaint, plaintiff is presently unaware of any
other person(s) who may be entitled by law to recover damages in this action.

13.     By reason of the death of the Juan E. Rodriguez, Sr., plaintiff and other

4

members of decedent's family, have suffered pecuniary loss and/or damages.

14.     The decedent, Juan E. Rodriguez, Sr., did not bring an action for his personal injuries during his lifetime, and no other action for his death has been commenced on his behalf, or on the behalf of his estate, against the defendants, other than this civil action.

15.     Plaintiff also hereby claims that damages suffered by the Estate of Juan E. Rodriguez, Sr. by reason of the death of the decedent, as well as the pain and suffering the which decedent experienced prior to his death, are the direct result of the negligence and/or other liability-producing conduct of defendants as described herein.

## JURISDICTIONAL STATEMENT

16.     Plaintiff repeats each and every allegation of all preceding and subsequent paragraphs with the same force and effect as if set forth at length herein.

17.     This action is brought pursuant to 42 U.S.C. §1983 and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and jurisdiction is founded upon these statutory and constitutional provisions.  Plaintiff further invokes the pendant jurisdiction of this Court to hear and decide claims arising under state law.

## CORE OPERATIVE FACTS

18.     Plaintiff repeats each and every allegation of all preceding and

subsequent paragraphs with the same force and effect as if set forth at length herein.

19.     On approximately 6/7/2007, decedent Juan E. Rodriguez, Sr. (DOB 12/27/37) became an inmate at the Dauphin County Prison.

20.     At the time of his 6/7/2007 incarceration, Mr. Rodriguez was a 69 year old man who had never previously been diagnosed with diabetes, and whose only known physical health issue was medically controlled high blood pressure.

21.     On approximately 8/30/2007, Defendant Dr. Jindal ordered a blood test for the decedent in order to check, among other things, his fasting glucose level.

22.     On approximately 8/31/2007, Defendants Dr. Jindal, Dr. Wagner, and/or P. A. Macut, reviewed and/or became aware of the results of the blood test for decedent indicating that he had an abnormally high fasting glucose level of 124ug/dL.

23.     At the time, defendants Dr. Jindal, Dr. Wagner, and/or P. A. Macut, should have been, or were in fact, aware that the decedent's abnormally high glucose level was an indication that he may have diabetes.

24.     At the time, defendants Dr. Jindal, Dr. Wagner, and/or P. A. Macut, should have been, or were in fact, aware that diabetes is a life-threatening disease which requires monitoring and treatment, including monitoring of the patient's blood-glucose levels and use of insulin and/or other medication(s) in order to keep the patient alive and healthy.

25.     From the date of decedent's 8/30/2007 abnormally high glucose test, until December of 2007, defendants did nothing to investigate, assess, monitor, diagnose, treat, or otherwise care for decedent with regard to the possibility that he

had diabetes.

26.     In December of 2007, after several days of symptoms, including
dizziness, stomach problems, throat soreness, throat dryness, gland inflamation, gland
soreness, dehydration, gait problems, and complaints to defendants of "not feeling
well," and being "very sick," the decedent was finally transferred and admitted to
Harrisburg Hospital on approximately 12/19/2007 where he died on 12/21/2007 from
complications from uncontrolled diabetes, including, but not limited to excessively
elevated blood-glucose levels, diabetic ketoacidosis, respiratory failure, renal failure,
and/or cardiac arrest.

27.     At no time, from decedent's initial incarceration date of 6/7/2007 until
his diabetes-related death on 12/21/2007, did defendants investigate, assess, monitor,
diagnose, treat, or otherwise care for decedent with regard to diabetes, and, in fact,
ignored the 8/30/2007 blood test indicating that he did.

28.     On approximately 11/23/2007, Defendants Dr. Wagner and/or P. A.
Macut pre-ordered a blood test for decedent, to take place on 2/7/2008, in order to
check, among other things, his glucose level, however, it was never performed
because decedent died approximately seven weeks prior to the blood test, which was
inexplicably scheduled in the distant future.

29.     Nothing, other than their own failure to act, prevented defendants Dr.
Wagner, Dr. Jindal, and/or P. A. Macut from ordering blood tests to assess decedent's
glucose level and diagnose his diabetes earlier than the scheduled 2/7/2007 date,
however, they failed to timely order such tests despite the previous abnormally high

glucose level of 8/31/2007, and in blatant disregard to decedent's life, health, safety, and/or welfare.

30.    Despite knowledge of the prior abnormally high fasting glucose level of 8/31/2007, defendants Dr. Wagner, Dr. Jindal, and/or P. A. Macut did nothing to investigate, assess, monitor, diagnose, treat, or otherwise care for decedent with regard to the possibility that he had diabetes.

31.    In addition to ignoring the obvious diabetic implications of the 8/31/2007 blood test, defendants, individually and/or by and through their agents, were also aware of decedent's various diabetes-related symptoms and complaints (through contact with decedent himself, contact with other inmates in his cell block, and contact from plaintiff's family) during the time period from approximately 12/12/2007 until decedent was finally transferred to Harrisburg Hospital on 12/19/2007, where he died 2 days later.  These symptoms included dizziness, dehydration, sore throat, dry throat, abdominal pain, swollen neck, and/or general complaints of being "sick."

32.    On approximately 12/15/2007, decedent even made a written request for medical attention, but was not seen by a medical person until 12/17/2007, when someone from the nursing staff, who was the employee and/or agent of defendants County of Dauphin and/or PrimeCare, failed to evaluate the decedent's diabetic status in any way despite his prior 8/31/2007 abnormally high blood sugar reading, and instead determined that he was merely suffering from an "upset stomach."

33.    On approximately 12/18/2007, decedent was seen by defendants Dr. Wagner and/or P. A. Macut, who also failed to evaluate the decedent's diabetic status

in any way despite the prior abnormally high blood sugar reading, and instead determined that he was suffering from dehydration and pharyngitis (a sore throat).

34. At no point in time did defendants Dr. Wagner, Dr. Jindal, and/or P. A. Macut do anything to investigate, assess, monitor, diagnose, treat, and/or otherwise care for decedent, with regard to diabetes, despite clear indications that he did in fact have this life-threatening disease. Indications which included the 8/31/2007 blood test results as well as the signs, symptoms and complaints which he had during the week or so prior to his death (i.e. dizziness, dehydration, sore throat, stomach and gland issues, and gait problems).

35. As such, all defendants deliberately, recklessly, and/or negligently disregarded plaintiff's complaints, signs, symptoms and prior test results in addition to requests and pleas from his family members, other member of his cell block, and decedent himself, to provide him with appropriate medical attention and care.

36. As a direct and proximate result of the deliberate, reckless, deliberately indifferent, and/or negligent conduct of all defendants, decedent suffered severe and painful physical and mental injuries, including, but not limited to, intense pain and suffering, anguish, inconvenience, loss of life's pleasures, and death.

37. As a direct and proximate result of the deliberate, reckless, deliberately indifferent, and/or negligent conduct of all defendants, plaintiff suffered damages as well, including, but not limited to, loss of the society, companionship, comfort and emotional and financial support of her now-deceased husband, Juan E. Rodriguez, Sr..

## COUNT I
## CIVIL RIGHTS VIOLATIONS
## DEFENDANTS COUNTY OF DAUPHIN, PRIMECARE, AND WARDEN DEROSE

38.    Plaintiff repeats each and every allegation of all preceding and subsequent paragraphs with the same force and effect as if set forth at length herein.

39.    At all relevant times, defendants County of Dauphin, Warden DeRose, and/or PrimeCare, were all  "persons" pursuant to 42 U.S.C. §1983.

40.    At all relevant times, defendants County of Dauphin, Warden DeRose, and/or PrimeCare were all acting "under color of state law" pursuant to 42 U.S.C. §1983.

41.    At all relevant times, a "special relationship" existed between defendants County of Dauphin, Warden DeRose, and/or PrimeCare and the decedent, Juan Rodriguez, Sr..

42.    Defendants, County of Dauphin, Warden DeRose, and/or PrimeCare, while acting under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference to Juan E. Rodriguez, Sr.'s rights, violated 42 U.S.C. §1983 and deprived him of his rights as guaranteed under the Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or Local Law in that these defendants, without lawful basis, caused the aforementioned injuries and damages to the decedent, as described in this civil action complaint, in violation of his aforesaid guaranteed rights as follows:

a.    failing to properly train, and/or establish proper training policies for,

10

their employees and/or agents including, but not limited to, defendants Jindal, Wagner, and/or Macut;

      b.     failing to exercise proper care and/or supervision over, and/or establish proper monitoring and supervision policies for, their employees and/or agents including, but not limited to, defendants Jindal, Wagner, and/or Macut;

      c.     failing to exercise proper care and/or supervision over, and/or establish proper medical monitoring, supervision, and/or testing policies for the prisoners of Dauphin County Prison;

      d.     failing to provide a setting where appropriate medical diagnosis, treatment and/or care of inmates of the Dauphin County Prison could occur, and/or failing to establish policies for same;

      e.     failing to observe and/or enforce state, federal, and/or local laws and/or regulations with regard to the Dauphin County Prison as it relates to decedent and those similarly situated;

      f.     maintaining and/or supporting a policy and/or procedure of failing to follow and/or enforce state, federal, and/or local laws and/or regulations with regard to:

          i.     medical diagnosis, treatment and/or care of inmates;

          ii.     nutrition for inmates;

          iii.     language translation for inmates;

          iv.     monitoring and supervision of the inmates' medical condition and/or status;

11

      v.     diabetic testing and/or management of inmates;

      vi.    training and supervision of their agents, employees, ostensible agents, and/or apparent agents;

      vii.   investigation and/or monitoring of inmates' medical condition or status;

      viii.  investigation and/or monitoring of inmates' nutritional condition or status;

      ix.    ensuring the safety of inmates at Dauphin County Prison;

      x.     availability and provision of in-house medical treatment and/or care of inmates at Dauphin County Prison;

      xi.    availability and provision of outside medical treatment and/or care of inmates at Dauphin County Prison;

    g.    failing to adequately train, manage, and/or supervise their agents, employees, ostensible agents, and/or apparent agents, including defendants Dr. Jindal Wagner, and/or Macut, to ensure a reasonable standard of care for the health, safety, and/or welfare of the decedent and/or other persons in situations such as decedent;

    h.    failing to enact policies and/or procedures to ensure that decedent and/or other persons similarly situated would not be injured, suffer, and die due to undiagnosed and untreated diabetes;

    i.     ignoring and/or acting with deliberate indifference to decedent's health, safety, and/or welfare;

    j.     such other deliberately indifferent, reckless, and willful and wanton

conduct resulting in the violation of decedent's rights that shall be revealed through discovery prior to trial.

43.    Defendants, County of Dauphin, Warden DeRose, and/or PrimeCare's, aforesaid conduct, initiated under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference violated 42 U.S.C. §1983 and deprived the decedent of his rights as guaranteed under the Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or Local Law without lawful basis, thus causing injuries and damages to decedent and plaintiff as aforesaid.

**COUNT II**
**CIVIL RIGHTS VIOLATIONS**
**DEFENDANTS DR. JINDAL, DR. WAGNER, AND P.A. MACUT**

44.    Plaintiff repeats each and every allegation of all preceding and subsequent paragraphs with the same force and effect as if set forth at length herein.

45.    At all relevant times, defendants Dr. Wagner, Dr. Jindal, and/or P.A. Macut were all a "person" pursuant to 42 U.S.C. §1983.

46.    At all relevant times, defendants Dr. Wagner, Dr. Jindal, and/or P.A. Macut were all acting "under color of state law" under 42 U.S.C. §1983.

47.    At all relevant times, a "special relationship" existed between defendants Dr. Wagner, Dr. Jindal, and/or  Physician Assistant Macut and the decedent, Juan E. Rodriguez, Sr..

48.    Defendants, Dr. Wagner, Dr. Jindal, and/or P.A. Macut while acting

under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference to Juan E. Rodriguez, Sr.'s rights violated 42 U.S.C. §1983 and deprived him of his rights as guaranteed under the Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or Local Law in that these defendants, without lawful basis, caused the aforementioned injuries and damages to the decedent, as described in this civil action complaint, in violation of his aforesaid guaranteed rights as follows:

a.     ignoring and/or acting with deliberate indifference to decedent's health, safety, and/or welfare;

b.     failing to inform or apprize themselves of the very real possibility that plaintiff suffered from life-threatening diabetes which required frequent monitoring and treatment in prison;

c.     failing to inform or apprize themselves of the potential for injury and death to decedent, and failing to act accordingly;

d.     ignoring, denying, and/or failing to investigate various signs, symptoms, and/or test results which clearly indicated that decedent had a life-threatening medical condition (diabetes) which required frequent monitoring and treatment, and which was a constant danger to his life, health, safety, and/or welfare while in prison;

e.     ignoring, denying, and/or failing to investigate the pleas and complaints of decedent, his family, and/or the other inmates of his cell block, requesting appropriate   and   timely   medical   evaluation,   treatment,   and/or   care   during

14

approximately a one week period prior to his transfer to the outside medical facility where he eventually died several days later;

f.      permitting, authorizing, directing, and/or otherwise causing decedent to remain in an obviously dangerous medical situation (living in prison with unmonitored and untreated diabetes) with deliberate indifference to his health, safety, and/or welfare;

g.      failing to exercise proper care and/or supervision over the decedent's medical care;

h.      failing to take appropriate action to prevent the injuries to, and death of, decedent, and/or to minimize the extent of his injuries and the likelihood of his death;

i.      failing to observe and/or enforce state, federal, and/or local laws and/or regulations with regard to decedent and/or defendants;

j.      failing to timely investigate, evaluate, diagnose, and/or treat decedent's diabetes in the face of various signs, symptoms, and a test result which clearly indicated that he did indeed have a life-threatening medical condition (diabetes) which required frequent monitoring and treatment, and which was a constant danger to his health, safety, and/or welfare while in prison;;

k.      failing to meet minimum professional standards with regard to decedent;

l.      ignoring, failing to treat seriously, and/or failing to investigate the medical deterioration of decedent in the approximate week leading up to his death;

m.      failing to properly supervise and monitor decedent;

n.      such other deliberately indifferent, reckless, and willful and wanton

conduct resulting in the violation of Plaintiff's rights that shall be revealed through discovery prior to trial.

49.     Defendants, Dr. Wagner, Dr. Jindal, and/or Physician Assistant Macut's aforesaid conduct, initiated under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference violated 42 U.S.C. §1983 and deprived decedent of his rights as guaranteed under the Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or Local Law without lawful basis, thus causing injuries and damages to decedent and plaintiff as aforesaid.

## COUNT III
## NEGLIGENCE
## DEFENDANTS PRIMECARE, WARDEN DEROSE, DR. JINDAL, DR. WAGNER, AND P.A. MACUT

50.     Plaintiff repeats each and every allegation of all preceding and subsequent paragraphs with the same force and effect as if set forth at length herein.

51.     At all relevant times, Defendants PrimeCare, Warden DeRose, Dr. Jindal, Dr. Wagner, and/or P.A. Macut had a duty to act reasonably under the circumstances and were obligated, and had a duty to decedent, to practice their professions in accordance with safe and acceptable standards of medicine, so as to prevent and/or minimize any harm to decedent.

52.     Defendants were negligent and did not act reasonably under the circumstances with regard to the decedent by:

16

a.      ignoring and/or acting with deliberate indifference to decedent's health, safety, and/or welfare;

b.      failing to inform or apprize themselves of the very real possibility that plaintiff suffered from life-threatening diabetes which required frequent monitoring and treatment in prison;

c.      failing to inform or apprize themselves of the potential for injury and death to decedent, and to act accordingly;

d.      ignoring, denying, and/or failing to investigate various signs, symptoms, and test result which clearly indicated that decedent had a life-threatening medical condition (diabetes) which required frequent monitoring and treatment, and was a constant danger to his health, safety, and/or welfare while in prison;

e.      ignoring, denying, and/or failing to investigate the pleas and complaints of decedent, his family, and/or the other inmates of his cell block, requesting appropriate and timely medical evaluation, treatment, and/or care during approximately a one week period prior to his transfer to the outside medical facility where he eventually died several days later;

f.      permitting, authorizing, directing, and/or otherwise causing decedent to remain in an obviously dangerous medical situation (living in prison with unmonitored and untreated diabetes) with deliberate indifference to her health, safety, and/or welfare;

g.      failing to exercise proper care and/or supervision over the decedent's medical care;

h.      failing to take appropriate action to prevent the injuries and death of decedent, and/or to minimize the extent of his injuries and the likelihood of his death;

i.      failing to observe and/or enforce state, federal, and/or local laws and/or regulations with regard to decedent and/or defendants;

j.      failing to timely investigate, evaluate, diagnose and treat decedent's diabetes in the face of various signs, symptoms, and a test result which clearly indicated that he did indeed have a life-threatening medical condition (diabetes) which required frequent monitoring and treatment, and was a constant danger to his health, safety, and/or welfare while in prison;;

k.      failing to meet minimum professional standards with regard to decedent;

l.      ignoring, failing to treat seriously, and failing to investigate the medical deterioration of decedent in the approximate week leading up to his death;

m.      failing to properly supervise and monitor decedent;

n.      failing to exercise proper care and/or supervision over those responsible for monitoring and caring for decedent and other similarly situated inmates;

o.      failing to establish, evaluate, enforce, and/or follow appropriate monitoring and supervision policies for decedent and other similarly situated inmates;

p.      such other deliberately indifferent, reckless, and willful and wanton conduct resulting in the violation of Plaintiff's rights that shall be revealed through discovery prior to trial.

53.      Defendants Warden DeRose and/or PrimeCare were further negligent in

failing to exercise proper care and/or supervision over their employees, agents, ostensible agents, and/or apparent agents with regard to the Dauphin County Prison and decedent.

54. By reason of the aforesaid actions and inactions of defendants, PrimeCare, Warden DeRose, Dr. Jindal, Dr. Wagner, and/or P.A. Macut, plaintiff and decedent suffered injuries and damages as aforesaid.

55. The negligent actions and/or inactions of defendants, PrimeCare, Warden DeRose, Dr. Jindal, Dr. Wagner, and/or P.A. Macut, as set forth in this complaint, increased the risk that plaintiff would be damages and that decedent would be injured, damaged, and die an untimely death as he did.

## COUNT IV
## WRONGFUL DEATH
## ALL DEFENDANTS

56. Plaintiff repeats each and every allegation of all preceding and subsequent paragraphs as though fully set forth herein.

57. The potential Wrongful Death Beneficiaries of the Estate of Juan E. Rodriguez, Sr. are as follows:

|   |       |                                                              |
|---|-------|--------------------------------------------------------------|
| 1. | **Wife:** | Luz De Ada Rodriguez<br>6 Ivey Lane<br>Harrisburg, PA 17104 |
| 2. | **Son:** | Juan Rodriguez, Jr.<br>4482 East Mallory Street<br>Memphis, TN 38117 |
| 3. | **Son:** | Juan Rodriguez, III<br>6 Ivey Lane<br>Harrisburg, PA 17104 |

    4.   **Daughter:**   Maribel Leger
                           9 Ivey Lane
                           Harrisburg, PA 17104

    5.   **Daughter:**   Claribel Perez
                           407 Poplar Street
                           Lancaster, PA 17603

    6.   **Daughter:**   Luz De Ada Martinez
                           340 East Chestnut St. - Apt. #2
                           Lancaster, PA 17602

58.    Luz De Ada Rodriguez, Administratrix of the Estate of Juan E. Rodriguez, Sr., claims damages for the sums which the decedent would have contributed to the above named beneficiaries during the course of the decedent's lifetime had his untimely death not occurred when it did.

59.    Luz De Ada Rodriguez, Administratrix of the Estate of Juan E. Rodriguez, Sr., claims damages for the loss of companionship and/or services that the decedent, as a husband and/or father, would have contributed to his wife and/or children during the course of his lifetime, had his untimely death not occurred when it did.

60.    Luz De Ada Rodriguez, Administratrix of the Estate of Juan E. Rodriguez, Sr., claims damages for the loss of services that the decedent, as a husband and a father, would have contributed to his wife and/or his children, including, but not limited to, such services as guidance, tutelage, and moral upbringing, during the course of his lifetime, had his untimely death not occurred when it did.

61.    Luz De Ada Rodriguez, Administratrix of the Estate of Juan E. Rodriguez, Sr., claims damages for medical, funeral, burial, and estate administration expenses related to the death of the decedent.

## COUNT V
## SURVIVAL ACTION
## ALL DEFENDANTS

62.     Plaintiff repeats each and every allegation of all preceding and
subsequent paragraphs as though fully set forth herein.

63.     Luz De Ada Rodriguez, Administratrix of the Estate of Juan E. Rodriguez,
claims damages for the sums which the decedent would have earned between the date
of his untimely death and today.

64.     Luz De Ada Rodriguez, Administratrix of the Estate of Juan E. Rodriguez,
claims damages for the sums which the decedent would have earned between today
and his life expectancy.

65.     Luz De Ada Rodriguez, Administratrix of the Estate of Juan E. Rodriguez,
claims damages as will fairly and adequately compensate the decedent for the mental
and physical pain, suffering, and inconvenience that he endured from the moment of
his injury until the moment of his death, which occurred as a result of the
aforementioned negligence and/or other liability-producing conduct of the defendants.

## JURY DEMAND

66.     Plaintiff demands a trial by jury of 12.

**WHEREFORE**, Plaintiff demands judgment against defendants on all Counts of
this complaint for damages together with interest, costs of suit, and such other relief
as is determined to be just and proper.

SILVERMAN & FODERA, P.C.

_____

Leonard V. Fodera
John R. Trotman, Jr.

1835 Market Street - Suite 2600
Philadelphia, PA  19103
(215) 561-2100

*Attorneys for Plaintiff*

DATED: 1/27/2009